This is an appeal from a judgment based on a jury verdict against The Mason and Dixon Lines, Inc. ("Mason and Dixon"), awarding Warren Byrd $75,000 for breach of contract and $25,000 for fraud. Mason and Dixon filed a motion for a judgment notwithstanding the verdict or, in the alternative, for a new trial. The trial court denied the motion and Mason and Dixon appealed. We affirm.
Mason and Dixon is a transportation company based in Kingsport, Tennessee. It relies on independent agents operating in territories throughout the country to solicit freight for delivery in Mason and Dixon's equipment. This equipment consists of company-owned and independently owned transport vehicles. In June 1988, Mason and Dixon entered a written agreement with Warren Byrd, designating Byrd as an independent agent in Mobile, Alabama. Byrd was already an agent for Ranger Transport ("Ranger"), a competitor of Mason and Dixon's. Byrd had serviced Ranger successfully since 1979, earning Ranger over $1,000,000 in gross income each year. BWhite v. yrd's success for Ranger prompted Mason and Dixon to pursue an agency relationship with him.
Before securing an agreement with Byrd, Mason and Dixon had experienced difficulty in supplying the territory surrounding Mobile with transport equipment. To encourage Byrd's commitment, Mason and Dixon's regional director, Phillip Jones, and its regional manager, William Cowan, promised Byrd complete support in obtaining equipment for delivery of freight. Jones and Cowan were responsible for securing Mason and Dixon's contract with Byrd, but both left the company after Byrd entered his contract. Byrd served as an agent for Mason and Dixon until January 1990. During that time, he generated very little income for the company. Mason and Dixon attributed Byrd's inability to earn income to his failure to solicit independent truck owners to transport freight, and Mason and Dixon terminated him for that reason. Byrd claimed that his low income resulted from a failure by Mason and Dixon to supply him with equipment.
Byrd sued Mason and Dixon, alleging breach of contract and fraud. After a trial, the jury returned a verdict against Mason and Dixon. Mason and Dixon raises five issues for review. We address these *Page 70 
issues in light of the presumption that the jury's verdict is correct.
The strength of the jury verdict is based upon the right to trial by jury, White v. Fridge, 461 So.2d 793 (Ala. 1984), and a jury verdict is presumed to be correct. Alpine Bay Resorts,Inc. v. Wyatt, 539 So.2d 160, 162 (Ala. 1988). This presumption is strengthened by the trial court's denial of a motion for a new trial.
 "When a jury is the trier of fact, it is not for the trial judge, nor an appellate court, to attempt to determine with mathematical certainty that all of the various elements of evidence offered by the parties regarding specific costs and credits precisely equal the amount of the jury's verdict. We do not have trial by computer, nor do we have post-trial, or appellate review by the computer. The reviewing court does not substitute its own judgment as to the amount of damages for that of the trier of fact."
G.M. Mosley Contractors, Inc. v. Phillips, 487 So.2d 876, 879
(Ala. 1986). See also Hollis v. Wyrosdick, 508 So.2d 704 (Ala. 1987).
 "Upon review of a jury verdict, we presume that the verdict was correct; we review the tendencies of the evidence most favorably to the prevailing party; and we indulge such reasonable inferences as the jury was free to draw from the evidence. We will not overturn a jury verdict unless the evidence against the verdict is so much more credible and convincing to the mind than the evidence supporting the verdict that it clearly indicates that the jury's verdict was wrong and unjust."
Campbell v. Burns, 512 So.2d 1341, 1343 (Ala. 1987) (citation omitted). See also Ashbee v. Brock, 510 So.2d 214 (Ala. 1987);Jawad v. Granade, 497 So.2d 471 (Ala. 1986); and White v. Fridge, supra.
 I. Breach of Contract/Lost Profits
Mason and Dixon raises three issues with respect to Byrd's claims for lost profits. The only evidence of damages Byrd presented at trial related to lost profits. In Paris v. BucknerFeed Mill, Inc., 279 Ala. 148, 182 So.2d 880 (1966), this Court stated the general rule regarding recovery of lost profits as an element of damages:
 "[T]he loss of profits must be the natural and proximate, or direct result of the breach complained of and they must also be capable of ascertainment with reasonable, or sufficient, certainty, or there must be some basis on which a reasonable estimate of the amount of the profit can be made; absolute certainty is not called for or required."
Paris, 279 Ala. at 149-50, 182 So.2d at 881 (quoting 25 C.J.S.Damages § 43); see also Kirkland Co. of Anniston, P.C. v. A M Food Service, Inc., 579 So.2d 1278, 1285 (Ala. 1991); SuperValu Stores, Inc. v. Peterson, 506 So.2d 317, 327 (Ala. 1987);Morgan v. South Central Bell Telephone Co., 466 So.2d 107, 115
(Ala. 1985); Brendle Fire Equipment, Inc. v. Electronic Eng'rs,Inc., 454 So.2d 1082, 1034 (Ala.Civ.App. 1984). "[T]he rule dictates [that] recovery will ensue despite the fact damages cannot be calculated with mathematical certainty." Morgan,466 So.2d at 116.
Mason and Dixon first contends that Byrd did not establish a claim for breach of contract because his lost profits were not the natural and proximate result of Mason and Dixon's alleged breach. Byrd's breach of contract claim is based on Mason and Dixon's alleged failure to follow the termination procedure specified in the parties' written contract. Byrd asserts that any profits lost by Byrd resulted from Mason and Dixon's alleged failure to supply him with transport equipment. Because the promises to provide equipment were outside the written agreement, Mason and Dixon argue that all evidence respecting lost profits supported only Byrd's fraud claim, not his breach of contract claim; therefore, it says, the jury should not have considered any evidence of lost profits in connection with Byrd's claim of breach.
This Court has determined that a plaintiff attempting to establish damages in a breach of contract action need only " 'lay a foundation which will enable the trier of the facts to make a fair and reasonable estimate of the amount of damage.' " *Page 71 United Bonding Insurance Co. v. W.S. Newell, Inc., 285 Ala. 371,380, 232 So.2d 616, 624 (1969) (quoting 22 Am.Jur.2dDamages § 25). Mason and Dixon's argument fails to recognize that Byrd's testimony revealed essentially two varieties of lost profits. First, Byrd testified that he lost approximately $95,000 in profits during the term of the contract because Mason and Dixon failed to provide equipment as promised. Second, his testimony indicated that he had earned approximately $5,000 annually from his Mason and Dixon business and that he was capable of earning up to $70,000 annually. Jones testified that Byrd could have generated at least $1,000,000 in gross revenue per year for Mason and Dixon had the transport equipment been made available to Byrd. Byrd testified to the following concerning past profits and potential earning power:
 "Q. You heard Mr. Jones talk about some plaques on your walls. Do you know what he was talking about?
"A. Yes, sir.
"Q. What are they?
 "A. Well, they're plaques they give us for moving a million dollars worth of revenue in a year.
 "Q. And when was the first year you got that plaque?
"A. I believe it was '79 or '80.
"Q. And who awards them?
"A. Ranger out of Jacksonville.
 "Q. When you got one for '79, was that the last year you got it?
 "A. No, sir. I believe it was in '80 was the first one. I'm not sure. But I got one every year since.
"Q. The last 9, 10, 11 years?
"A. Yes, sir.
 "Q. And are you able to do — do you have an opinion as to whether or not you could do that kind of job for Mason and Dixon had they properly supported you?
 "A. Well, I felt it was twice as much business. Yes, I do feel like I could have done the same job for them without interfering with each other.
 "Q. Mr. Jones said that he approximated you being able to do a minimum million dollars a year for Mason and Dixon?
"A. Yes, sir.
 "Q. And your compensation was at least seven percent?
"A. Yes, sir.
"Q. And that's $70,000 a year?
"A. Yes, sir.
 "Q. And you had that contract for 20 months, didn't you?
"A. Yes, sir."
Byrd's evidence of past profits earned and his potential earning power provided a reasonable basis for the jury to estimate the damages flowing from the breach of contract.
The second issue Mason and Dixon raises is whether the evidence at trial provided the jury with a basis for estimating lost profits with "reasonable certainty." See Paris,279 Ala. at 149-50, 182 So.2d at 881. In Morgan, supra, this Court determined that testimony comparing the plaintiff's profits with those of his partner, both of whom were dentists, provided "a reasonable basis for the jury to approximate" the plaintiff's lost profits. Morgan, 466 So.2d at 116. The Court stated that "a horizontal comparison of two businesses" was a commonly accepted method for measuring losses. Id. To demonstrate lost profits, both Byrd and Jones testified that Byrd had earned gross income in excess of $1,000,000 for Ranger for each of the past 10 years. Further, both witnesses testified that Byrd could reasonably expect to generate a comparable amount of income for Mason and Dixon.[1] Byrd's comparison of his earnings for Ranger with his potential earnings for Mason and Dixon constituted a horizontal comparison of businesses and provided a basis for the jury to estimate with reasonable certainty the profits Byrd lost. *Page 72 
Third, Mason and Dixon claims that the trial court committed reversible error in excluding evidence offered to refute Byrd's claim for lost profits. The decision to allow testimony is a matter within the discretion of the trial court, and this discretion is not reversible in the absence of abuse.Raines v. Williams, 397 So.2d 86, 88 (Ala. 1981) (citingCostarides v. Miller, 374 So.2d 1335 (Ala. 1979); Moon v.Nolan, 294 Ala. 454, 318 So.2d 690 (1975)). In deciding whether to allow particular testimony, the court should focus on whether the testimony "tends to shed light on the main inquiry" or draws attention from it. Ryan v. Acuff, 435 So.2d 1244, 1247
(Ala. 1983).
Mason and Dixon offered the testimony of Gene Cellauro, the Mason and Dixon agent who succeeded Byrd, to establish that Byrd was not capable of producing a profit from Mason and Dixon's business that was comparable to his profits from Ranger's business. Byrd's attorney objected to Cellauro's testimony, arguing that the location of his agency and the terms of his contract indicated that he was not sufficiently similarly situated with Byrd to shed light on issues involving Byrd's claims of breach of contract and fraud.[2]
Based on the evidence before it, the trial court determined that Cellauro's testimony could have drawn the jury's attention away from the main issues and caused it to focus on collateral issues involving the differences between Byrd's contract with Mason and Dixon and Cellauro's. The trial court's decision to exclude Cellauro's testimony was not an abuse of discretion.
 II. Fraud
Mason and Dixon next argues that Byrd failed to establish his fraud claim because, it says, he did not present substantial evidence of all the requisite elements. To establish a claim of fraud based on a promise to perform in the future, the plaintiff must provide evidence of six elements:
 "1) a false representation; 2) of a material fact; 3) that is relied upon by the plaintiff; 4) such that he is damaged as a proximate result thereof; 5) the representation must have been made with a present intent to deceive; and 6) when the representation was made, the defendant intended not to perform in accordance with it."
Leisure American Resorts, Inc. v. Knutilla, 547 So.2d 424, 426
(Ala. 1989).
Byrd's fraud claim was based on promises he said were made to him by Jones, on behalf of Mason and Dixon, during their discussions about the agency agreement. Specifically, Byrd said that, to induce Byrd to enter the agreement Jones stated that Mason and Dixon would give Byrd "100 percent support" and that Jones showed Byrd a list of Mason and Dixon's equipment and told him that this equipment would be available to him if it was in the Mobile area. Mason and Dixon argues that the representations upon which Byrd's fraud claim is based were not material and were not made with the requisite intention to deceive, nor with an intention not to perform as promised.
First, Mason and Dixon asserts that Jones's statements were "mere puffery," not material representations. A jury should resolve the question of whether a statement constitutes a misrepresentation sufficient to support a fraud claim or is mere puffery. Sharp Electronics Corp. v. Shaw, 524 So.2d 586,592 (Ala. 1987) (citing Fidelity Casualty Co. of New York v.J.D. Pittman Tractor Co., 244 Ala. 354, 358, 13 So.2d 669, 672
(1943)). In making its determination, the jury should examine the alleged misrepresentation in the context in which it was made. Id. In the instant case, the evidence indicated that Mason and Dixon had experienced difficulty in the past in supplying the Mobile agent with transport equipment and that Mason and Dixon had frequently terminated its Mobile agent after a short time. Jones *Page 73 
testified that page Mason and Dixon was trying to build a favorable reputation in the Mobile area and that he had sought Byrd's services as a Mason and Dixon agent since 1985, because of Byrd's reputation for hard work and his success with Ranger. However, Byrd said he was reluctant to sign with Mason and Dixon because he feared that Mason and Dixon would not supply him with adequate equipment and that Mason and Dixon would take the agency away after he had worked to build it. The jury had a right to consider Jones's promises in the context of these facts, and it did not err in finding that Jones's promises were material.
We now turn to Mason and Dixon's claim that Byrd did not prove that Jones's promises were made with an intent to deceive and with an intent not to perform as promised; the question of intent to deceive and the question of intent not to perform were also questions for the jury to resolve. SouthernProperties, Inc. v. Lee, 368 So.2d 288, 289 (Ala. 1979). Although the mere failure to provide the promised support is not, by itself, sufficient to prove an intention to deceive or an intention not to perform, the jury may consider it in the context of other facts surrounding the promise. Id. Testimony by Jones and Byrd indicated that Mason and Dixon's failure to dispatch equipment to its Mobile agent was a recurring problem, well known to Mason and Dixon and to independent trucking agents in the area, but that Jones's promises of support induced Byrd to enter the agency agreement. Further, testimony from Byrd and from Mason and Dixon employees indicated that, both before and after Jones's promises to Byrd, Mason and Dixon followed a practice of dispatching equipment to agents in other territories, even though Byrd had expressed a need for the equipment. From this evidence, the jury could reasonably infer that Mason and Dixon intended to deceive and intended not to perform in accordance with its promises.
 III. Jury Charge
Finally, Mason and Dixon asserts that the trial court erred in reading the plaintiff's jury instruction number nine, because, Mason and Dixon says, it constituted a comment on the evidence and directly contradicted other instructions, thereby misleading the jury. The challenged instruction contained the following sentence: "Plaintiff is entitled to recover damages for breach of his agreement with the Defendant." When determining whether a particular statement constitutes reversible error, we must view the charge as a whole.Elmore v. Morrison Assurance Co., 502 So.2d 378, 379 (Ala. 1987). If the charge, in its entirety, states the law correctly, no reversible error exists. Treadway v. Brantley,437 So.2d 93, 97 (Ala. 1983). We find that this charge, viewed in its entirety, was a correct statement of the law.
Our review of the record establishes that Byrd presented substantial evidence of the elements of his causes of actions. The evidence, apparently believed by the jury, established breach of contract and fraud in the inducement. The court did not err in denying Mason and Dixon's motions for directed verdict, new trial, and JNOV. Accordingly the judgment is affirmed.
AFFIRMED.
ALMON, ADAMS, STEAGALL and INGRAM, JJ., concur.
[1] Because Byrd's contract with Mason and Dixon provided that Byrd would receive a commission of at least seven percent of the gross income he earned for Mason and Dixon, Byrd estimated that he lost the potential to earn profits of approximately $70,000 annually as a result of Mason and Dixon's breach.
[2] Even though Cellauro's territory was the same as Byrd's, Cellauro's agency was located in Pensacola, Florida.