June Burdeshaw sued Ford Motor Company (hereinafter "Ford"), alleging that negligence on its part had caused the wrongful death of her husband, Robin Burdeshaw. Specifically, she contended that Ford negligently manufactured a defective automatic transmission shifter, and negligently designed and manufactured a defective brake system, on a 1978 Ford truck and that that negligence caused the death of her husband, when the truck's transmission slipped out of "neutral" into "reverse" and caused the truck to crush him against a loading dock. Ford argued that the accident was not due to any negligence on its part, but rather was due to poor maintenance and to the natural wear of the components of the truck. The jury found in favor of Mrs. Burdeshaw and awarded her $1,225,000 for the wrongful death of her husband. Ford filed a series of posttrial motions, requesting that the trial court enter a judgment notwithstanding the verdict or, in the alternative, grant a new trial. The trial court denied these requests, specifically stating:
 "Trial of this case was over several days with numerous exhibits introduced into evidence and expert witnesses from both sides. . . .
 ". . . The Court finds that there was substantial evidence presented by Plaintiff from which the jury could infer a defect in the manufacture of the shifting device of the transmission and a defect in design and/or manufacture of the braking system.
 "The Court finds . . . from the stipulation and related evidence that Ford Motor Company did have notice prior to the manufacture of this vehicle of problems and/or defects in the Ford automatic transmissions resulting in inadvertent rearward movement which could cause personal injury or death and that such evidence provided a basis for the jury's decision and their verdict."
Generally, in cases where a defect in a vehicle is alleged to have caused an injury-producing accident, manufacturers have been sued on one or more of three legal *Page 238 
theories: implied warranty, under Alabama's implied warranty of merchantability statute, Ala. Code 1975, § 7-2-314; common law negligence; and liability under the Alabama Extended Manufacturer's Liability Doctrine (AEMLD). General Motors Corp.v. Edwards, 482 So.2d 1176 (Ala. 1985). Here, however, Burdeshaw dropped her AEMLD claim, and the only theory submitted to the jury was common law negligence. Negligence is the failure to do what a reasonably prudent person would have done under the same or similar circumstances, or the doing of something that a reasonably prudent person would not have done under the same or similar circumstances. Elba Wood Products,Inc. v. Brackin, 356 So.2d 119 (Ala. 1978). To recover under a negligence claim, the plaintiff must establish (1) that the defendant owed a duty to the plaintiff; (2) that the defendant breached that duty; (3) that the plaintiff suffered a loss or an injury; and (4) that the defendant's negligence was the actual and proximate cause of that loss or injury. Lollar v.Poe, 622 So.2d 902 (Ala. 1993).
When reviewing a jury verdict, we presume that the verdict is correct, and we review the tendencies of the evidence most favorably to the prevailing party. Mason Dixon Lines, Inc. v.Byrd, 601 So.2d 68 (Ala. 1992). We indulge such reasonable inferences as the jury was free to draw from the evidence, and we will not overturn a jury verdict unless the evidence clearly indicates that the jury's verdict was wrong and unjust. Mason Dixon Lines, supra. This presumption is further strengthened by the trial court's denial of a motion for a new trial. Senn v.Alabama Gas Corp., 619 So.2d 1320 (Ala. 1993). The credibility and weight of the evidence presented at trial are for the jury to determine, and the jury's verdict is not easily set aside by the court. Stokes v. Long-Lewis Ford, Inc., 549 So.2d 51 (Ala. 1989).
Viewing the record with the attendant presumptions, we note the following:
In October 1990, Robin Burdeshaw was crushed to death when the transmission of a 1978 Ford garbage truck jumped from "neutral" into "reverse" and the truck moved, pinning him against a loading dock. The Ford truck was owned by Mr. Burdeshaw's employer, the Wiregrass Rehabilitation Center ("Wiregrass"), and was used in its recycling activities. The compactor was powered by the truck's "power takeoff" unit ("PTO unit") and operation of the compactor required an engine speed of about 1500 rpm. Most garbage trucks have a hand throttle in the rear to increase the engine speed when necessary to operate the compactor. However, this truck had no hand throttle. Rather, to maintain an accelerated engine speed during compactor operations, Wiregrass employees placed a piece of pipe between the driver's seat and the accelerator pedal.
An employee of Wiregrass testified that on the day of the accident he visually inspected the truck and then backed the truck to approximately 10 feet from the loading dock. He put the gear selector lever into "neutral" and set the parking brake. He then engaged the PTO unit to supply power to the compactor, increased the engine speed to about 1500 rpm, and placed the pipe between the seat and the accelerator pedal. Approximately 30-45 minutes later, Robin Burdeshaw, the deceased, walked behind the truck. While he was between the truck and the loading dock, the transmission jumped from "neutral" into "reverse" and the truck shot backwards, crushing Mr. Burdeshaw. The testimony at trial reveals that the truck hit the loading dock with such force that it bounced off and slammed into Mr. Burdeshaw and the loading dock a second time.
An examination of the truck after the accident revealed that the gear shifter assembly was loose because of a missing nut. This meant that the driver could place the gear selector into the "neutral" position, but that because of the looseness of the selector the transmission would not be totally in neutral. The evidence presented at trial indicated that the nut (fastener) that was supposed to be used with the shift selector assembly was to be a prevailing torque nut that was to last for the life of the truck. The nut (fastener) was not supposed to come off or to loosen during the entire life of the truck.
Qualified experts testified that the Ford truck was defective and unreasonably dangerous in its design and manufacture when it *Page 239 
left Ford Motor Company and that this defect was the proximate cause of Mr. Burdeshaw's death. The jury heard evidence from qualified experts regarding defects in the Ford truck, including Ford's failure to use appropriate fasteners, its failure to place some form of gear selector indicator on the truck to inform the driver of the gear selector position, and Ford's use of an inadequate braking system. Furthermore, the jury heard evidence that while this vehicle was being designed and manufactured Ford was aware of the dangers of inadvertent rearward movement in passenger cars and light trucks with automatic transmissions. Yet, the evidence indicated, Ford took no action to eliminate this dangerous potential in this truck.
We have thoroughly reviewed the record in a light most favorable to Mrs. Burdeshaw, and we are convinced that the jury's verdict was not plainly and palpably wrong. To the contrary, Mrs. Burdeshaw presented significant evidence that, if believed by the jury, fully supported the verdict.
Ford also raises arguments concerning two expert witnesses. First, it contends that the trial court erred in allowing Mrs. Burdeshaw's expert to express an opinion based upon a hypothetical question. We disagree.
An expert is allowed to give an opinion upon a hypothetical question premised on facts already in evidence or on evidence to be admitted subsequently. Crawford v. Hall, 531 So.2d 874
(Ala. 1988). The decision to allow such testimony will not be disturbed on appeal except for palpable abuse. W.S. v. T.W.,585 So.2d 26 (Ala. 1991). We have reviewed the record and cannot say that the trial court palpably abused its discretion in allowing the expert's opinion in response to a hypothetical question.
Second, Ford contends that the trial court erred in excluding the opinions of an expert witness just because he had not been designated as an expert witness pursuant to the pretrial order. We again disagree.
The purpose of pretrial orders is to simplify the issues for the actual trial. The law is clear that the court may require the parties to reveal the names of expert witnesses they expect to call and that, unless it would be manifestly unjust, the parties are bound by the provisions of the pretrial order.Electrolux Motor AB v. Chancellor, 486 So.2d 414 (Ala. 1986). The refusal to allow expert witnesses to testify because of a party's failure to comply with the pretrial order is clearly a matter of discretion, not subject to reversal. Electrolux,supra.
It is clear from the record that Ford failed to designate this expert in compliance with the pretrial order, and we cannot hold that the trial court erred in disallowing his testimony.
The judgment is affirmed.
AFFIRMED.
ALMON, SHORES, and BUTTS, JJ., concur.
HOUSTON, J., concurs in the result.