Rel: June 7, 2024

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## OCTOBER TERM, 2023-2024

_____

### SC-2023-0484

_____

### Leanne W. Deaton

### v.

### South Highland Child Development Center, Inc., and Suzanne Snow

### Appeal from Jefferson Circuit Court
### (CV-21-902447)

PARKER, Chief Justice.

Leanne W. Deaton, the plaintiff below, appeals an order of dismissal entered by the Jefferson Circuit Court in favor of the

defendants, South Highland Child Development Center, Inc. ("South Highland"), and Suzanne Snow. We affirm.

## I. Facts

Deaton is the mother of three minor children -- J.D., L.W.D., and R.E.D. During the proceedings for Deaton's divorce from the children's father, the trial court conducting those proceedings appointed Deaton as the primary custodial parent of all three children. In 2019, the father enrolled J.D. and L.W.D. into Edgewood Elementary ("Edgewood") and enrolled R.E.D. in the day-care facility operated by South Highland ("the day-care facility"). Before R.E.D.'s enrollment at the day-care facility, the father partially completed the child's pre-admission record. The father did not list Deaton as R.E.D.'s biological mother, and South Highland did not otherwise procure her identity or inquire why the mother was not listed. Deaton did not approve or authorize R.E.D.'s enrollment at the day-care facility.

On August 27, 2019, when Deaton discovered the enrollments, she immediately returned to Birmingham to take custody of her children and to remove them from the school and the day-care facility. She went first to Edgewood with her attorney. She personally served the relevant court

documents on Edgewood, and Edgewood relinquished physical custody of J.D. and L.W.D. to Deaton. Edgewood then notified the father.

Once the father was notified that Deaton was coming to pick up R.E.D., he traveled to the day-care facility. Deaton called South Highland and informed it that she was the custodial parent and that the father had enrolled the child in the day-care facility without her consent. In response to this information, South Highland's representative hung up the telephone. When Deaton called back, South Highland's representative placed her on hold and did not connect her with anyone. South Highland did not attempt to verify the information provided or to contact an appropriate state agency, such as the Alabama Department of Human Resources, or the police. When Deaton and her attorney attempted to obtain custody of R.E.D., they were met by agents or employees of South Highland who prevented them from retrieving R.E.D. Deaton personally served South Highland with the court order appointing her as the custodial parent, but South Highland still refused to relinquish physical custody of R.E.D. to Deaton. While Deaton was trying to retrieve her child, South Highland kept R.E.D. inside the day-care facility, away from Deaton. Deaton's attorney observed Snow, the executive director of the

day-care facility, direct R.E.D. away from the attorney and take R.E.D. out the rear of the day-care facility. Snow subsequently relinquished physical custody of R.E.D. to the father.

On August 25, 2021, Deaton sued South Highland and Snow in the Jefferson Circuit Court, alleging claims of negligence and wantonness. The next day, August 26, 2021, she filed her first amended complaint, which corrected her name from "Denton" to "Deaton" and added a claim alleging the tort of outrage/intentional infliction of emotional distress. South Highland and Snow filed a motion to dismiss, pursuant to Rule 12(b)(6), Ala. R. Civ. P., asserting that Deaton had failed to state a claim on which relief could be granted. The circuit court heard oral arguments on that motion. But on February 5, 2022, before the circuit court could rule on that motion, Deaton filed a second amended complaint, in which she added a claim alleging intentional interference with her parental rights. South Highland and Snow filed a motion to strike the second amended complaint on the basis that Deaton had unduly delayed in filing it and to dismiss for failure to state a claim on which relief could be granted. The circuit court entered separate orders granting that motion on both grounds.

4

Nine days later, on February 14, 2022, Deaton filed a third amended complaint that pleaded the same facts and claims as her first and second amended complaints and added a conspiracy claim. Southern Highland and Snow filed a motion to strike the conspiracy claim on the basis that Deaton had unduly delayed in filing it and to dismiss for failure to state a claim on which relief could be granted. Deaton argued that Rule 78, Ala. R. Civ. P., granted her an "automatic right" to file an amended complaint after the dismissal of her second amended complaint. Four days later, she filed a motion to alter, amend, or vacate the order dismissing her second amended complaint. The circuit court set a hearing date for that motion, but Deaton filed this appeal before the hearing date.

## II. Standard of Review

This Court reviews de novo the propriety of a judgment of dismissal for failure to state a claim, resolving all doubts in favor of the plaintiff. Bay Lines, Inc. v. Stoughton Trailers, Inc., 838 So. 2d 1013, 1017 (Ala. 2002). For purposes of a Rule 12(b)(6) motion, the court must accept the facts in the complaint as true. See Creola Land Dev., Inc. v. Bentbrooke Hous., L.L.C., 828 So. 2d 285, 288 (Ala. 2002). A Rule 12(b)(6) dismissal is proper only when it appears beyond doubt that the plaintiff can prove

5

no set of facts that would entitle the plaintiff to relief. Garrett v. Hadden, 495 So. 2d 616, 617 (Ala. 1986); Hill v. Kraft, Inc., 496 So. 2d 768, 769 (Ala. 1986). In making that determination, this Court considers not whether the plaintiff will ultimately prevail, but only whether the plaintiff may possibly prevail. Fontenot v. Bramlett, 470 So. 2d 669, 671 (Ala. 1985); Rice v. United Ins. Co. of America, 465 So. 2d 1100, 1101 (Ala. 1984).

The standard of review for analyzing the propriety of an order granting a motion to strike is similar to the standard of review for analyzing the propriety of a judgment granting a motion to dismiss -- i.e., the de novo standard of review pursuant to which doubts are to be resolved in favor of the nonmoving party. See Bay Lines, 838 So. 2d at 1019.

### III. Analysis

#### A. Deaton's Rule 78 Argument

Deaton first argues that Rule 78, Ala. R. Civ. P., gave her an "automatic right" to file her third amended complaint. Rule 78 provides, in relevant part: "Unless the court orders otherwise, an order granting a motion to dismiss shall be deemed to permit an automatic right of

6

amendment of the pleading to which the motion is directed within ten (10) days from service of the order." Deaton argues that the circuit court erred by not putting her case "back on the active docket" after she filed her third amended complaint. She requests that this Court remand the case back to the circuit court with instructions to place the case back on the active docket for further proceedings.

This argument necessitates that "'[w]e … first consider whether this court has jurisdiction over this appeal, because "jurisdictional matters are of such magnitude that we take notice of them at any time and do so even ex mero motu."'" Pratt Cap., Inc. v. Boyett, 840 So. 2d 138, 144 (Ala. 2002) (quoting Nichols v. Ingram Plumbing, 710 So. 2d 454, 455 (Ala. Civ. App. 1998), quoting in turn Wallace v. Tee Jays Mfg. Co., 689 So. 2d 210, 211 (Ala. Civ. App. 1997)). Ordinarily, an appeal will lie only from a final judgment that conclusively determines all issues before the trial court. Palughi v. Dow, 659 So. 2d 112, 113 (Ala. 1995). This Court lacks jurisdiction to entertain appeals from nonfinal judgments. Dickerson v. Alabama State Univ., 852 So. 2d 704, 705 (Ala. 2002). The parties before us do not address this issue. We must therefore determine ex mero motu whether the filing of Deaton's third amended

complaint rendered the order dismissing her second amended complaint nonfinal.

Ordinarily, a judgment dismissing a complaint is an appealable, final judgment. Guilford v. Spartan Food Sys., Inc., 372 So. 2d 7, 9 (Ala. 1979). Here, however, Deaton purported to file her third amended complaint under Rule 78 before filing her notice of appeal. The cases dealing with this order of filings are sparse. However, the available persuasive authority most on point, Parris v. Prison Health Services, Inc., 991 So. 2d 270, 272-73 (Ala. Civ. App. 2008), seems to indicate that filing an amended complaint after the entry of a judgment of dismissal but before filing a notice of appeal renders the judgment of dismissal nonfinal. In Parris, the plaintiff filed an amended complaint under Rule 78 seven days after his original complaint had been dismissed. 991 So. 2d at 271. The trial court did not address whether the plaintiff could amend the dismissed complaint in its judgment of dismissal. Id. at 272. The plaintiff subsequently filed a postjudgment motion to alter, amend, or vacate the judgment of dismissal, id. at 271, but he did not ask for leave to amend. Id. at 273. The trial court denied that motion. On appeal, the Court of Civil Appeals held that the judgment dismissing the original

complaint was not final because the plaintiff's amended complaint was still pending before the trial court. The Court of Civil Appeals noted that the trial court had not addressed amendments in its judgment and that the plaintiff had not requested leave to amend in his postjudgment motion. 991 So. 2d at 272-73. Therefore, the Court of Civil Appeals reasoned, the trial court had not "order[ed] otherwise" and Rule 78 granted the plaintiff an "automatic right to amend" his complaint. 991 So. 2d at 273. Because he had availed himself of that right, the Court of Civil Appeals determined, the case was still ongoing in the trial court.

We note, however, that the "automatic" right of amendment under Rule 78 is not unconditional. Rule 78 provides, in pertinent part: "<u>Unless the court orders otherwise</u>, an order granting a motion to dismiss shall be deemed to permit an automatic right of amendment of the pleading to which the motion is directed within ten (10) days from service of the order." (Emphasis added.) Moreover, courts have discretion to refuse amended complaints if there is some "valid ground" for doing so. <u>United Handicapped Indus. of America v. National Bank of Com.</u>, 386 So. 2d 437, 441 (Ala. Civ. App. 1980) (holding that Rule 78 "is expressive of [the] policy" that "amendments are to be freely allowed <u>and their refusal must</u>

9

be based on some valid ground" (emphasis added)). See also 1 Gregory C. Cook, Alabama Rules of Civil Procedure Annotated 377 (5th ed. 2018) (noting that "it would seem logical that [the Rule 78] right to amend might be limited to the first order granting a motion to dismiss (or that the court could, in the case of a second such order, restrict such a repetitive use of Rule 78)"). Rule 78 therefore permits a trial court to forbid a plaintiff from filing an amended complaint.

Here, the circuit court dismissed Deaton's second amended complaint for failure to state a claim on which relief could be granted, but it also simultaneously struck her second amended complaint on the basis that Deaton had unduly delayed in filing it. This situation appears to present an issue of first impression. An order striking a pleading is not, by itself, a final order. Cooper v. Cooper, 216 Ala. 366, 366, 113 So. 239, 240 (1927).

"An amended complaint supersedes the previously filed complaint and becomes the operative pleading, unless it subsequently is modified." Ex parte Puccio, 923 So. 2d 1069, 1072 (Ala. 2005) (citing Grayson v. Hanson, 843 So. 2d 146, 149 (Ala. 2002)). "'Once an amended pleading is interposed, the original pleading no longer performs any function in the

case and any subsequent motion made by an opposing party should be directed at the amended pleading.'" Holley v. St. Paul Fire & Marine Ins. Co., 396 So. 2d 75, 79 (Ala. 1981) (plurality opinion) (quoting 6 Wright and Miller, Federal Practice and Procedure § 1476 (1971)) (later adopted by Ex parte Puccio, supra). Accordingly, Deaton's second amended complaint was the only complaint pending before the circuit court when it granted the motion to strike and to dismiss. Puccio, 923 So. 2d at 1072; see also Holley, 396 So. 2d at 79 (noting that the "second-amended complaint was the only complaint before the trial court when it ruled on the motions to dismiss"). This is why its order of dismissal would have been final in the case but for Deaton's attempted amendment pursuant to Rule 78. Guilford, 372 So. 2d at 9. By dismissing the second amended complaint, the circuit court left no previous complaint pending before it. Puccio, 923 So. 2d at 1072; Holley, 396 So. 2d at 79. And by simultaneously striking the second amended complaint, the circuit court effectively rendered it void too, thereby leaving Deaton with no complaint at all to amend under Rule 78.

The circuit court struck the second amended complaint on the ground that "there was 'undue delay in filing an amendment, when it

could have been filed earlier based on the information available or discoverable,' which 'is in itself ground for denying an amendment.'" This had the effect of the circuit court's "order[ing] otherwise" with respect to the right of amendment under Rule 78. See Mississippi Valley Title Ins. Co. v. Hooper, 707 So. 2d 209, 214-15 (Ala. 1997) (rejecting the proposition that trial courts have "only two choices: either, by silence, to allow an amendment, or, by express direction, specifically to deny an amendment," and holding that, instead, trial courts may craft a remedy that "falls between" those two extremes). By striking Deaton's second amended complaint on the basis that Deaton had unduly delayed in filing it, the circuit court implicitly ruled that any amendments must present something new to the circuit court beyond merely tacking new legal theories onto the same "information available or discoverable" earlier.

Deaton's third amended complaint contains no information that was not available and discoverable earlier. It only adds a claim of civil conspiracy. But civil conspiracy is not an independent cause of action; it is not viable absent the commission of an underlying independently recognized tort. Funliner of Alabama, LLC v. Pickard, 873 So. 2d 198, 211 (Ala. 2003). Because Deaton's underlying claims had already been

dismissed, her third amended complaint provided the circuit court with nothing independently meritorious to consider beyond what it had already dismissed and struck. The third amended complaint is thus precluded by the circuit court's previous orders. Hooper, 707 So. 2d at 216 (holding that because the circuit court had already set conditions on the plaintiff's right to amend, "there was no reason … to make a subsequent order regarding amendment. Instead, [the circuit court] had 'ordered otherwise,' as contemplated by Ala. R. Civ. P. 15 and 78, thus precluding further amendments.").

This Court has defined a final judgment as "a judgment that is 'definitive of the cause in the court below, leaving nothing further to be done, save [its enforcement].'" Faith Props., LLC v. First Com. Bank, 988 So. 2d 485, 490-91 (Ala. 2008) (quoting Ex parte Gilmer, 64 Ala. 234, 235 (1879)). In the absence below of a complaint amended in accordance with the circuit court's orders, the dismissal and striking of the second amended complaint leaves nothing to be done. Those orders together constitute a final judgment, and therefore this Court has jurisdiction to hear this appeal. We turn now to the merits of Deaton's claims in her second amended complaint.

B. Deaton's Claims of Negligence and Wantonness

"To meet the burden of proof in a negligence action, a plaintiff must prove that the defendant owed a duty to the plaintiff, that the defendant breached that duty, and that the breach proximately caused the plaintiff to be injured." Martin v. Goodies Distrib., 695 So. 2d 1175, 1177 (Ala. 1997) (citing Ford Motor Co. v. Burdeshaw, 661 So. 2d 236 (Ala. 1995)) (emphasis added). Similarly, to establish wantonness, a plaintiff must show that the defendant owed the plaintiff a duty and that it acted in such a way that it knew injury would likely or probably result. Norfolk S. Ry. Co. v. Johnson, 75 So. 3d at 624, 645 (Ala. 2011).

Deaton argues that "every person owes every other person a duty not to hurt him." Deaton's brief at 15 (citing Smitherman v. McCafferty, 622 So. 2d 322, 324 (Ala. 1993)). She asserts that the central factor in the "duty" analysis is whether the defendant could foresee the injury to the plaintiff. She argues that Southern Highland and Snow "regularly analyze[] rights to physical custody" and "ha[ve] a responsibility to determine that the person removing the child from [the daycare's facility's] physical custody has the legal right to do so." Id. at 17. Therefore, Deaton argues, Southern Highland and Snow owed her a duty

to deliver R.E.D. to her as soon as she personally served the custody order on them. She argues that Southern Highland and Snow, as the owner and executive director of the day-care facility, had a legal duty to comply with that custody order and that, by failing to do so, they breached their duty to her.

Deaton cites no direct authority for any of these propositions. Instead, she argues that the duty for which she argues is derived from the general duty of reasonable supervision that schools have toward children. See Stevens v. Chesteen, 561 So. 2d 1100, 1103 (Ala. 1990) (citing Best v. Houtz, 541 So. 2d 8, 9 (Ala. 1989)). This duty of reasonable supervision, she argues, "is breached 'if there is evidence from which a jury could find that supervision could have prevented the accident.' Green By and Through Green v. Bester, 568 So. 2d 792, 794 (Ala. 1990)." Deaton's brief at 17.

In Stevens, supra, a student whose leg had been injured in a motorcycle accident was sent to the football field for physical-education class despite having an injury exemption. As the student observed the class without participating, some of the participants ran into him, reinjuring his leg. This Court held that the school owed a duty of

15

reasonable supervision to the student but that the school had not violated that duty. 561 So. 2d at 1103. In Green ex rel. Green v. Bester, 568 So. 2d 792 (Ala. 1990), a fourth-grade student was injured when she was hit in the head by a rock thrown by a sixth-grade student on the school playground. This Court held that the supervising teacher and the school principal owed a duty of reasonable supervision "to [their] students." Id. at 794 (emphasis added). In Gordon v. Cornerstone Assembly of God Church, 985 So. 2d 762 (La. Ct. App. 2008), the First Circuit Court of Appeal of Louisiana held that a supervising member of a church owed a duty of reasonable supervision to a minor who was attending the church's youth service. None of those cases either deal with day-care facilities or establish that Southern Highland and Snow owed a duty to anyone but R.E.D. And Deaton cites no further authority to connect those cases to her assertion that South Highland and Snow owed her a duty to deliver R.E.D. to her.

South Highland and Snow argue that they are subject to the "Child Care Licensing and Performance Standards for Day Care Centers and Nighttime Centers" prescribed by the Alabama Department of Human Resources (Nov. 30, 2018) ("the DHR standards"). The DHR standards

require day-care operators to keep a list of persons to whom a child can be delivered ("the approved pickup list"). That list is obtained from the enrolling parent, and Deaton was not on South Highland's list. South Highland and Snow argue that the DHR standards do not require them to deliver a child to a person who is not on that list, even if that person hands them official-looking paperwork. South Highland and Snow also argue that, while Deaton may have established that they owed a duty to R.E.D., she has not established that they owed a duty to <u>her</u>.

Deaton concedes that the DHR standards impose a duty of care. But she argues that the existence of a duty imposed by regulations does not necessarily abrogate a preexisting common-law duty. She argues that "South Highland's compliance with the D.H.R. minimum standards does not preclude a distinct claim under common law." Deaton's brief at 23.

As the United States Supreme Court has put it, "[t]he mere imposition of statutory duties does not remove liability for breach of existing common-law duties." <u>United States ex rel. Willoughby v. Howard</u>, 302 U.S. 445, 452 (1983). But the holding in <u>Howard</u> does not change the result in this case. The reason is simple: Deaton has not established that South Highland and Snow owed her any duty under the

17

common law. She has shown that schools and churches owe children a duty of reasonable supervision. But she has not established (1) that South Highland and Snow owed any duty to her or (2) that their duty of reasonable supervision included any duty to R.E.D. to deliver her to a particular parent, particularly one who was not on the approved pickup list. Nor has she sued on behalf of R.E.D.

From our investigation of our precedents, it seems that Alabama courts have yet to rule whether the common-law duty of reasonable supervision requires a day-care facility to deliver a child to the custodial parent when that parent is not on its approved pickup list. But it seems that the sparse available persuasive authority from other states seems to cut against Deaton's arguments.

In the only case we found in which a court held that the release of a child to a noncustodial father amounted to negligence, (1) the father was not on the approved pickup list; (2) a woman impersonating the custodial mother asked the school to let the father pick up the child; and (3) a school employee released the child to the father without consulting the school records or a school administrator. See McDowell v. Smith, 285 Ga. 592, 678 S.E.2d 922 (2009). In the present case, the father was on the

18

approved pickup list, but the mother was not. And there are other decisions holding that it is negligence to release a child to a person who does not appear on an approved pickup list. See <u>Haney v. Bradley Cnty. Bd. of Educ.</u>, 160 S.W.3d 886 (Tenn. Ct. App. 2004); see generally Ralph Gerstein & Lois Gerstein, 133 Am. Jur. Proof of Facts 3d 87, <u>Liability of Public or Private Day Care Center or Nursery School</u> § 13 (2013). Also, in all those cases, the injury involved was physical injury to the child, not a temporary loss of physical custody by a parent. Those cases therefore confirm that a duty is owed to the child but do not establish any duty owed to the parent.

Without an established common-law duty, the circuit court correctly applied the duty of care imposed by the DHR standards. Those standards provide that day-care operators cannot establish any policies that contradict the DHR standards. They also require every day-care operator to keep an approved pickup list. The circuit court correctly noted that those standards did not impose on South Highland and Snow a duty to determine who had custody of R.E.D. before she was enrolled, "so long as a 'parent/guardian' enrolled her." Here, there is no dispute that R.E.D.'s father enrolled her. Deaton, her mother, was not on the approved

19

pickup list. The duty imposed by the D.H.R. standards was to keep an approved pickup list. To deliver R.E.D. to someone not on the approved pickup list would arguably have been negligence. See generally 133 Am. Jur. <u>Proof of Facts</u> 3d 87, at § 13. And as South Highland and Snow point out, to deliver R.E.D. to Deaton would have violated the DHR standards.

Deaton's last argument is that South Highland and Snow are liable to her for negligence or wantonness under the doctrine of res ipsa loquitur. The doctrine of res ipsa loquitur applies when

> "'a thing which causes injury, without fault of the injured person, is shown to be under the exclusive control of the defendant, and the injury is such as, in the ordinary course of things, does not occur if the one having such control uses proper care, then the injury arose from the defendant's want of care.'"

<u>Martin v. Comfort Touch Transp., Inc.</u>, 278 So. 3d 1254, 1262 (Ala. Civ. App. 2018) (quoting <u>Alabama Power Co. v. Berry</u>, 254 Ala. 228, 236, 48 So. 2d 231, 238 (1950), citing in turn <u>San Juan Light & Transit Co. v. Requena</u>, 224 U.S. 89, 99 (1912)). Deaton cites no authority to establish that the doctrine of res ipsa loquitur has ever been applied in the context of a day-care facility refusing to deliver a child to a custodial parent who is not on the approved pickup list. The only authority she does cite involved the mutilation of a decedent's corpse by funeral-home personnel,

20

which caused the plaintiff extreme emotional distress. And, indeed, both Alabama cases that have discussed the application of the doctrine of res ipsa loquitur to suits by parents against day-care facilities involved injuries to the child, not to the parent. See <u>Ward v. Forrester Day Care, Inc.</u>, 547 So. 2d 410 (Ala. 1989); <u>Edosomwan ex rel. Edosomwan v. A.B.C. Daycare & Kindergarten, Inc.</u>, 32 So. 3d 591 (Ala. Civ. App. 2009).

Moreover, Deaton has not presented this Court with any authority for any of her arguments as to the second prong of the doctrine of res ipsa loquitur. She merely asserts that "[c]ommon knowledge would lend itself to the belief that any harm would be the fault of South Highland [and Snow] because [they were] the only one[s] who had the minor child and [were] the only one[s] who could release the child." Deaton's brief at 24. But she does not show that South Highland and Snow's failure to deliver R.E.D. to a person not on the approved pickup list would not occur "in the ordinary course of things" without negligence. Without that showing, Deaton cannot prevail on this ground.

Because she has not established that South Highland and Snow owed her a duty or that the doctrine of res ipsa loquitur is applicable, Deaton can prove no set of facts establishing that Southern Highland and

21

Snow are liable to her for either negligence or wantonness. The circuit court therefore did not err in dismissing those claims in her second amended complaint for failure to state a claim on which relief could be granted.

### C. Deaton's Claim of Intentional Infliction of Emotional Distress

Deaton's next argument is that the circuit court erroneously dismissed her claim of intentional infliction of emotional distress ("IIED"), which is often referred to in our cases as a tort-of-outrage claim. See Wilson v. University of Alabama Health Servs. Found., P.C., 266 So. 3d 674, 675 n. 1 (Ala. 2017). Under Alabama law, to recover for IIED, the plaintiff must establish that "[the conduct] (1) was intentional or reckless; (2) was extreme and outrageous; and (3) caused emotional distress so severe that no reasonable person could be expected to endure it." Green Tree Acceptance, Inc. v. Standridge, 565 So. 2d 38, 44 (Ala. 1990). Whether conduct is outrageous is generally for the trier of fact to determine. American Rd. Serv. Co. v. Inmon, 394 So. 2d 361, 365 (Ala. 1980). The conduct must "'be regarded as atrocious and utterly intolerable in a civilized society.'" Harrelson v. R.J., 882 So. 2d 317, 322 (Ala. 2003) (quoting Inmon, 394 So. 2d at 365).

Deaton argues that the circuit court erroneously narrowed the scope of the tort by acknowledging that this Court had applied it to only "three kinds of conduct." Deaton's brief at 27. In acknowledging this, the circuit court quoted this Court's own dicta in <u>Little v. Robinson</u>, 72 So. 3d 1168, 1172-73 (Ala. 2011). However, this Court more recently held that, although we have allowed recovery for IIED only in those three factual scenarios, that does not mean that it is <u>only</u> applicable in those scenarios. <u>Wilson</u>, 266 So. 3d at 677.

Deaton goes on to argue that South Highland and Snow's actions were tantamount to a kidnapping. She relies on <u>United States v. Uces</u>, F. App'x 115 (11th Cir. 2018), to support this argument. In <u>Uces</u>, the United States Circuit Court of Appeals for the 11th Circuit held that the removal of a child from inside the United States to outside the United States by a noncustodial parent constituted a violation of the International Parental Kidnapping Crime Act. Deaton does not argue that R.E.D.'s father removed her from the United States in this case or otherwise kidnapped R.E.D. Nor does she address this glaring factual distinction. She does cite persuasive authority from other jurisdictions tending to show that a noncustodial parent's abduction of a child can support a claim of IIED.

But those persuasive authorities all involve claims against the other parent, not against the owner and executive director of a day-care facility. Deaton does not argue that South Highland and Snow had any knowledge that R.E.D.'s father intended to abduct her or colluded with him intentionally in doing so. South Highland and Snow merely complied with the DHR standards, as required under Alabama law -- which is hardly "extreme and outrageous" conduct.

As noted above, South Highland and Snow were caught in the middle here. On the one hand, they were required to keep an approved pickup list and would violate the DHR standards if they released R.E.D. to anyone not on that list. On the other hand, Deaton was at the day-care facility with her attorney and a court order showing that she was R.E.D.'s custodial parent. South Highland and Snow decided to follow the DHR standards and return R.E.D. to the parent who was on the approved pickup list. Deaton is correct that an IIED claim may be applicable in more situations than the three situations it has been applied to historically. But this Court will affirm a trial court's judgment on any ground supported by the record, even if that ground was not considered or was rejected by the trial court. Austill v. Prescott, 293 So. 3d 333, 349

24

(Ala. 2019). And in this case, the record shows that Deaton failed to plead sufficient facts for her IIED claim to survive a motion to dismiss. The dismissal of this claim is therefore due to be affirmed.

D. Deaton's Claim of Intentional Interference with a Parental Right

Deaton's next argument is regarding her claim of intentional interference with a parental right ("IIPR"), a claim added in her second amended complaint. That complaint was stricken based on Deaton's undue delay in filing it and dismissed for failure to state a claim on which relief could be granted. In Alabama, the tort of IIPR tracks the Restatement (Second) of Torts § 700 (Am. L. Inst. 1977). Anonymous v. Anonymous, 672 So. 2d 787, 789 (Ala. 1995). That provision says: "[A person] who, with knowledge that the parent does not consent, abducts or otherwise compels or induces a minor child to leave a parent legally entitled to its custody or not to return to the parent ..., is subject to liability to the parent." To state a claim of IIPR, a plaintiff must plead facts tending to show

> "'(1) some active or affirmative effort by [the] defendant to detract the child from the parent's custody or service, (2) [that] the enticing or harboring [was] willful, [and] (3) [that the enticing or harboring was done] with notice or knowledge that the child had a parent whose rights were thereby invaded.'"

Anonymous, 672 So. 2d at 790 (quoting 67A C.J.S. Parent and Child § 131, p. 513 (1978)).

Here, Deaton has presented facts to show (1) that R.E.D. was enrolled in and dropped off at the day-care facility by her father; (2) that South Highland and Snow had R.E.D. in their physical custody when Deaton arrived to pick her up; (3) that R.E.D.'s father arrived to pick her up at the same time; (4) that Deaton and her attorney served the custody order on South Highland and Snow; and (5) that South Highland and Snow turned R.E.D. over to her father instead of Deaton through an entrance other than the one where Deaton and her attorney were. None of these facts show any "enticing" or "harboring" of R.E.D. She needed no enticing; she was in South Highland and Snow's custody already. And South Highland and Snow did not "harbor" R.E.D.; they merely relinquished her custody to her father rather than her mother.

Deaton argues that the "intent" element of an IIPR claim can be satisfied by knowledge that the custodial parent does not consent. Neither Restatement (Second) of Torts § 700 nor our cases so hold. "[K]nowledge that the parent has not consented" is necessary only when the defendant has "induce[d] the child to leave its home." Restatement

(Second) of Torts § 700 cmt. a. (emphasis added). Here, R.E.D. was already away from home. South Highland and Snow did not in any way induce her to leave her home. And South Highland and Snow followed their obligation under the DHR standards to release R.E.D. only to persons on the approved pickup list.

Deaton did not present the circuit court with sufficient facts to allow a reasonable jury to conclude that South Highland and Snow intended to interfere with her parental rights or that South Highland and Snow "enticed" or "harbored" R.E.D. The circuit court therefore did not err in dismissing this claim for failure to state a claim on which relief could be granted.

Deaton also argues that the circuit court erred in striking this claim. Because we are affirming the circuit court's dismissal of this claim under Rule 12(b)(6), Ala. R. Civ. P., we need not reach this argument. However, the record shows that the circuit court did not err in striking this claim.

Although Deaton is correct that leave to amend a pleading should be freely granted (Rule 15(a), Ala. R. Civ. P.), this Court has held that undue delay can constitute a ground for refusing leave to amend. Rector

27

v. Better Houses, Inc., 820 So. 2d 75, 77 (Ala. 2001). Undue delay can be found when the plaintiff seeks to amend the complaint to add a new claim based solely on facts the plaintiff knew or should have known at the time of filing the original complaint. In Rector, the plaintiff filed an amended complaint in which she raised new allegations seven months after filing her original complaint. 820 So. 2d at 77. The trial court determined that, because the new allegations were based on information that the plaintiff knew or should have known when she filed the original complaint, there had been undue delay. Id. On appeal, the plaintiff's only argument was that "the trial court abused its discretion because … amendments to pleadings should be liberally allowed." Id. at 78. She did not refute the trial court's conclusion that "the new allegations were based on facts she had known since the date she had commenced the action." Id. On appeal, this Court concluded that the trial court did not abuse its discretion in striking the plaintiff's amended complaint.

A plurality of the Court of Civil Appeals has held that two months is a sufficiently unreasonable delay to allow a court to refuse leave to amend. Nettles v. White, 36 So. 3d 48, 50 (Ala. Civ. App. 2008). We have held that a delay of six months without alleging new facts is undue delay.

28

<u>Burkett v. American Gen. Fin., Inc.</u>, 607 So. 2d 138, 141 (Ala. 1992). Here, Deaton filed her original complaint on August 25, 2021, and her first amended complaint on August 26, 2021. She filed her second amended complaint on February 5, 2022. She waited five months between the filing of her first amended complaint and her second amended complaint, and she has offered no reasonable basis for the delay. The circuit court therefore did not err in striking the new claim for IIPR on the basis that Deaton had unduly delayed in asserting it.

## IV. Conclusion

Based on the foregoing, we affirm the circuit court's order dismissing Deaton's case.

AFFIRMED.

Wise, Mendheim, Stewart, Mitchell, and Cook, JJ., concur.

Shaw, Bryan, and Sellers, JJ., concur in the result.